# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ARROW ELECTRONICS, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-13-S-954-NE |
| | ) | |
| UNITED CONNECTIVITY | ) | |
| SOLUTIONS, INC., JAMES D. | ) | |
| CAUDLE, SR., and HELEN W. | ) | |
| CAUDLE, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This action arises from a commercial dispute between plaintiff, Arrow Electronics, Inc., and defendant United Connectivity Solutions, Inc. ("United").[1] Plaintiff alleges that United breached a purchase contract and subsequently breached a forbearance agreement by failing to pay plaintiff in accordance with the terms of either contract.[2]  Plaintiff asserts state-law claims for breach of the forbearance agreement, breach of the purchase agreement, unjust enrichment, account stated, and promissory estoppel against United.[3]  Plaintiff also asserts state-law claims for breach of guaranty and promissory estoppel against the President of United, James D. Caudle,

---

[1] Doc. no. 1 (Complaint) ¶¶ 10-11.

[2] *Id.* ¶¶ 11, 17.

[3] *Id.* ¶¶ 22-59.

Sr., and his wife, Helen W. Caudle (collectively, "the Caudles").[4]   Plaintiff commenced this action in the Northern District of Alabama pursuant to 28 U.S.C. § 1332(a)(1), based upon the parties' complete diversity of citizenship and the requisite amount in controversy.[5]   Accordingly, "state substantive law and federal procedural law" apply.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

This action is before the court on plaintiff's motion for summary judgment.[6] This court ordered that "any response to the motion for summary judgment is due by July 19, 2013."[7]   Defendants have not responded to the motion.  Even so, this court cannot enter summary judgment by default.  The Eleventh Circuit has observed that:

> "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion."  [*United States v. One Piece of Real Property Located at 5800 SW 74th Ave.*, 363 F.3d 1099,] 1101 [(11th Cir. 2004)]. . . . Fed. R. Civ. P. 56(e) provides that where "'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.'"  *Id.* at 1101 (quoting Fed. R. Civ. P. 56(e)) (emphasis in the original).

*Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004) (alterations supplied).  Upon consideration of the pleadings and

---

[4] *Id.* ¶¶ 60-73.

[5] *Id.* ¶ 5.

[6] *See* doc. no. 10 (Motion for Summary Judgment).

[7] Unnumbered order entered June 25, 2013.

2

plaintiff's brief and evidentiary submissions, this court will grant plaintiff's summary judgment motion.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 indicates that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he plain language of [that rule] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alterations supplied).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> [However,] [t]he mere existence of *some* factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal citations omitted) (alterations and emphasis suppled).

3

If the moving party bears the burden of proof on an issue, if the case proceeded to trial, then that party must satisfy not only the initial Rule 56(c) responsibility of informing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial, but that party also must carry its ultimate burden by showing that it would be entitled to a directed verdict at trial.  *See Celotex,* 477 U.S. at 323-25; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue of material fact to be resolved at trial.

> In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.  If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

*United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*) (citations and internal quotation marks omitted) (alteration supplied).

## II.  SUMMARY OF FACTS

Plaintiff, Arrow Electronics, Inc., is a worldwide seller of electronic products.[8]

---

[8] Doc. no. 11-1 (Declaration of Douglass P. Christensen) ¶ 2.

Defendant United Connectivity Solutions, Inc. ("United") is an Alabama corporation.[9] Defendant James D. Caudle, Sr. is the president of United, and the husband of defendant Helen W. Caudle.[10]  The Caudles are citizens of the State of Alabama.[11]

United began ordering certain products from plaintiff in June of 2012.[12] Plaintiff delivered all of the products purchased to United on credit.[13]  Plaintiff then sent United 124 separate invoices for the cost of its purchases, which totaled $220,837.75.[14]

The Terms and Conditions of Sale state that the "terms of payment are net thirty (30) days from [the] invoice date," and that "any past due balance will accrue interest at the monthly rate of one and one-half percent."[15]  The Terms and Conditions also state that:  "[United] is responsible for all costs and expenses incurred by Arrow in collecting any sums owed by [United] (which may include, but are not limited to,

---

[9] *See* doc. no. 9 (Answer) ¶ 2 (admitting this fact).

[10] *See id.* ¶ 3 (admitting the fact that Mr. Caudle is the president of United); doc. no. 11-3 (Guarantee), at 10 (referring to the Caudles as "a married couple").  Document number 11-3 actually contains three separate documents:  *i.e.*, the Terms and Conditions of Sale (pages 1-3); the Forbearance Agreement (pages 4-8); and the Guaranty (pages 9-12).

[11] *See* doc. no. 9 (Answer) ¶¶ 3-4 (admitting these facts).

[12] *See id.* ¶ 10 (admitting this fact).

[13] *See id.* (admitting this fact).

[14] *See id.* (admitting the fact that Plaintiff sent invoices to United); doc. no. 11-2 (Invoices); doc. no. 11-3 (Forbearance Agreement), ¶ 2 (acknowledging that United was indebted to Arrow in the principal amount of $220,837.75 under the invoices).

[15] Doc. no. 11-3 (Terms and Conditions of Sale) ¶¶ 1, 4 (alteration supplied).

collection agency and reasonable attorneys' fees); "[a]ll transactions are governed by the laws of the State of New York"; and "[t]he parties waive any right to trial by jury."[16]

United admits that plaintiff delivered, and United accepted, the products purchased.[17]   Further, United does not allege that the products were defective.[18] However, United failed to pay for the products as the invoices became due, and thereby materially breached the terms of the invoices.[19]

In lieu of litigation, plaintiff and United entered into a Forbearance Agreement on February 27, 2013.[20]   Mr. Caudle, the President of United, signed the Agreement on its behalf.[21]   United acknowledged that it was indebted to plaintiff in the principal amount of $220,837.75 under the terms of the invoices, and agreed to pay the debt in twelve monthly installments.[22]

The Forbearance Agreement provides that if United fails to comply with its payment obligations, plaintiff is entitled to recover the indebtedness, minus any payments received under the Agreement, plus interest on the unpaid amount of the

---

[16] *Id.* ¶ 4 (alterations supplied).

[17] *See* doc. no. 9 (Answer) ¶ 10 (admitted these facts).

[18] *See generally id.* (omitting such allegations).

[19] *See* doc. no. 9 (Answer) ¶ 11 (admitting these facts).

[20] *See* doc. no. 11-3 (Forbearance Agreement).

[21] *Id.* at 6.

[22] *See id.* at 5.

debt at the rate of 18% per annum from the date of the Agreement, plus reasonable

attorneys' fees incurred by plaintiff to collect the debt.[23]

Concurrently with the execution of the Forbearance Agreement, Mr. and Ms.

Caudle executed a Guaranty in order to secure the payment of the indebtedness.[24]  The

Guaranty provides as follows:

> This Guaranty, made this 27th day of February, 2013 by Jimmy
> D. Caudle Sr. and Helen W. Caudle, a married couple, ("Guarantor") and
> having a home address of . . . guarantess [sic] the indebtedness of United
> Connectivity Solutions Inc. ("Customer") for the benefit of Arrow
> Electronics, Inc. ("Arrow").
>
> . . . .
>
> **1.  Obligations.**  As an inducement for to Arrow to grant credit,
> or assume a credit risk, from time to time, in respect of the sale or sales
> of goods made by Arrow to the Customer, or in respect of any other type
> of transaction by which Arrow may become the creditor of the Customer,
> the Guarantor shall pay to Arrow promptly when due, or upon demand
> thereafter, with interest, and without deduction or regard for any claim
> of setoff or counterclaim of the Customer, or any other defense, the full
> amount of all the value of the invoices due.  Payment to Arrow will also
> include costs and expenses of Arrow's collection of such obligations or
> indebtedness or of the obligations or indebtedness arising under this
> Guaranty, including reasonable attorneys' fees up to the
> beforementioned amount.
>
> **2.  Term of Guaranty.**  This is a continuing guaranty that will
> remain intact and is an irrevocable Guaranty except as agreed to in
> writing by Arrow and the Guarantor.  **This gauranty [sic] will remain**

---

[23] *Id.* at 6.

[24] *See* doc. no. 11-3 (Guaranty), at 9-12.

7

**intact until the full outstanding debt is paid in full.**

. . . .

**4. Character of obligation.** The obligation of Guarantor is a primary and unconditional obligation, and covers the debt to Arrow. This obligation shall be enforceable before, or after, proceeding against Customer, or against any security held by Arrow, and shall be effective regardless of the solvency, or insolvency, of Customer at any time, the extension or modification of the indebtedness of Customer by operation of law, or the subsequent incorporation, reorganization, merger, consolidation, or other change in the composition, nature, personnel, or location of Customer.

. . . .

**5. Choice of Laws, Consent to Jurisdiction and Service of Process.** This Guaranty shall for all purposes be deemed to be made in, and shall be governed by the laws of, the State of New York . . . .[25]

After the parties executed the Forbearance Agreement and Guaranty, United made two payments totaling $10,000, but failed to make any additional payments in material breach of the Agreement.[26]

## III. CLAIMS AGAINST UNITED

### A. Breach of the Forbearance Agreement

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the

---

[25] *Id.* at 10-11 (emphasis in original).

[26] *See* doc. no. 9 (Answer) ¶ 17 (admitting those facts); doc. no. 11-1 (Declaration of Douglass P. Christensen) ¶ 11.

defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002) (citing *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)).  With regard to the first element of a breach of contract claim, United does not allege in its Answer that the Forbearance Agreement lacks the requisite elements of a valid contract.[27]  With respect to the second element, it is undisputed that plaintiff performed its obligations under the Forbearance Agreement by not taking legal action to collect United's dept under the invoices so long as United remained in compliance with the Forbearance Agreement. With regard to the third element, United admits that it made two payments totaling $10,000, but failed to make any additional payments in material breach of the Agreement.[28]  Thus, with respect to the fourth element, plaintiff has suffered damages equal to the balance due under the Forbearance Agreement.[29]  Accordingly, plaintiff has established all four elements of its breach of contract claim against United.

Further, the Forbearance Agreement provides that if United fails to comply with its payment obligations, plaintiff is entitled to recover the indebtedness, minus any payments received under the Agreement, plus interest on the unpaid amount of the

---

[27] *See* doc. no. 9 (Answer).

[28] *See* doc. no. 9 (Answer) ¶ 17 (admitting those facts); doc. no. 11-1 (Declaration of Douglass P. Christensen) ¶ 11.

[29] *See* doc. no. 11-3 (Forbearance Agreement), at 5.

9

debt at the rate of 18% per annum from the date of the Agreement, plus reasonable attorneys' fees incurred by plaintiff to collect the debt.[30]  When United signed the Forbearance Agreement, it acknowledged its debt to plaintiff in the principal amount of $220,837.75.[31]  After the execution of the Agreement, United made two payments totaling $10,000,[32] thus reducing the amount of the debt to $210,837.75.  Between the execution of the Forbearance Agreement on February 27, 2013 and the entry of this order on July 23, 2013, the $210,837.75 in principal has accrued $15, 141 in interest.[33]  Further, plaintiff has incurred $10,715 in attorneys' fees, among other things:  to investigate, draft, and file a complaint against United; to attempt to settle the action; and, when the attempt to settle proved unsuccessful, to research, draft, and file the instant motion for summary judgment.[34]  Thus, plaintiff is entitled to recover from United a total amount of $236,693.75, calculated as follows:

(a) $210,837.75 in principal;

(b) $15,141 in accrued interest on the unpaid principal at a rate of 18% per annum; and

---

[30] *Id.* at 6.

[31] *See id.* at 5.

[32] *See* doc. no. 9 (Answer) ¶ 17 (admitting that fact); doc. no. 11-1 (Declaration of Douglass P. Christensen) ¶ 11.

[33] *See* doc. no. 11-1 (Declaration of Douglass P. Christensen) ¶ 14 (stating that interest under the Forbearance Agreement accrues at a rate of $103 per diem).

[34] Doc. no. 11-4 (Declaration of Justin B. Palmer) ¶ 7.

(c) $10,715 in attorneys' fees.

**B.      Breach of the Purchase Agreement**

Plaintiff argues that "[i]f, for any reason, the Court were to determine that United is not liable to Arrow under the Forbearance Agreement, the undisputed facts unequivocally demonstrate that United is liable to Arrow under the invoices for purposes of the breach of contract claim set forth in the Second Cause of Action of the Complaint."[35]   Because this court holds that United *is* liable to plaintiff for $210,837.75 in principal, $15,141 in interest, and $10,715 in attorneys' fees under the Forbearance Agreement, it need not address the alternative argument that United is also liable to plaintiff for the same sums under the Purchase Agreement.

## IV.  CLAIM AGAINST THE CAUDLES

The Guaranty Agreement executed by United President James D. Caudle, Sr. and his wife, Helen W. Caudle, provides that it "shall for all purposes be deemed to be made in, and shall be governed by the laws of . . . the State of New York."[36]   Like the elements of a breach of contract claim under Alabama law, the elements of such a claim under New York law are:  "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv)

---

[35] Doc. no. 11 (Brief in Support of Motion for Summary Judgment), at 11 (alteration supplied).

[36] Doc. no. 11-3 (Guaranty), at 11.

damages." *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (citing *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004)) (additional citations omitted).   Plaintiff has established:   that the Caudles executed an agreement guaranteeing the payment of United's debt;[37] that plaintiff has complied with the terms of the agreement;[38] that the Caudles have not paid United's debt in accordance with the agreement;[39] and that plaintiff has, thus, suffered damages equal to the balance due under the Guaranty Agreement.[40]   Accordingly, plaintiff has established all four elements of its breach of contract claim against the Caudles.   Thus, in the event that United does not pay the amount of $236,693.75 as discussed in Section III(A), *supra*, plaintiff is entitled to recover that amount from James D. Caudle, Sr. and Helen W. Caudle, jointly and severally.

## V.  CONCLUSION

For the reasons explained above, plaintiff's motion for summary judgment is GRANTED.   A final judgment against defendants consistent with this memorandum opinion and order will be entered contemporaneously herewith.   Costs are taxed to

---

[37] *Id.*

[38] *See* doc. no. 9 (Answer) (omitting allegations that plaintiff failed to perform under the Guarantee Agreement).

[39] *See* doc. no. 9 (Answer) (omitting allegations that United has been paid).

[40] *See generally id.*

defendants.  The clerk is directed to close this file.

DONE and ORDERED this 24th day of July, 2013.

_____
United States District Judge